UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL W. HAMBLIN, D.V.M., P.C. d/b/a ALPINE ANIMAL HOSPITAL, LTD., an Illinois professional corporation, individually and as the representative of a class of similarly-situated persons, ) ) ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. |
| v. ) ) | **CLASS ACTION** |
| INTERNATIONAL SURGICAL PRODUCTS, INC. d/b/a RICA SURGICAL PRODUCTS, INC., an Illinois corporation, ) ) ) ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, DANIEL W. HAMBLIN, D.V.M., P.C. d/b/a ALPINE ANIMAL HOSPITAL, LTD., ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, INTERNATIONAL SURGICAL PRODUCTS, INC. d/b/a RICA SURGICAL PRODUCTS, INC. ("Defendant"):

**PRELIMINARY STATEMENT**

1. This case challenges Defendant's practice of sending unsolicited advertisements by facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (collectively, "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from sending fax advertisements without the recipient's "prior express invitation or permission." The TCPA

provides a private right of action and provides minimum statutory damages of $500 per violation.

3. On or about January 25, 2022, Defendant sent Plaintiff an unsolicited fax advertisements in violation of the TCPA (the "Fax"), a true and correct copy of which is attached hereto as Exhibit A, and made a part hereof.

4. Upon information and belief, Defendant sent the Fax and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA.

5. The Faxes describe the commercial availability or quality of Defendant's property, goods, or services, namely, Defendant's various surgical suite and sterilization products. (Exhibit A.)

6. Plaintiff alleges on information and belief that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to the advertisements sent to Plaintiff.

7. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax intrudes into the recipient's seclusion and violates the recipient's right to privacy. Unsolicited faxes occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

8. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA. Plaintiff seeks to certify a class which were sent the Fax and other unsolicited fax advertisements that were sent without prior express invitation or permission and without compliant opt-out language (to the extent the

affirmative defense of "established business relationship" is alleged). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

9. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event the Court determines any TCPA violations were willful or knowing.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11. This Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

12. Plaintiff, DANIEL W. HAMBLIN, D.V.M., P.C., is an Illinois professional corporation that does business as ALPINE ANIMAL HOSPITAL, LTD. Plaintiff's principal place of business is within this judicial district.

13. On information and belief, Defendant, INTERNATIONAL SURGICAL PRODUCTS, INC., is an Illinois corporation that does business as RICA Surgical Products, Inc. with its principal place of business in Schiller Park, IL.

14. "RICA Surgical Products, Inc. is an ISO 13485:2016 and 9001:2015 certified surgical instrument manufacturer and medical products marketer based in Schiller Park, Illinois. Since 1984, RICA Surgical Products has been providing high quality surgical instruments, medical equipment and supplies to surgeons, veterinarians, medical hospitals and other health care professionals. The foundation of RICA Surgical Products' business is our commitment to provide you with high quality products at an excellent value. RICA Surgical Products is a leading supplier of surgical products including, Pilling-Weck Instruments, KMedic Orthopedic Instruments, Weck Visistat Skin Staplers, Weck Hemoclip Ligation systems, Pleur-Evac chest drainage systems, and our patented line of Thermal Controlled pads." (www.ricasurgical.com, last visited February 21, 2022.)

## FACTS

15. On or about January 25, 2022, Defendant sent the Fax to Plaintiff using a telephone facsimile machine, computer, or other device. (Exhibit A.)

16. The January 25, 2022 Fax states, in part:

### RICA® Surgical Products, Inc.
## SPECIAL OFFERS

"Visit RICA's exhibit **(Booth #3401)** during the 2022 VX to see our expanding range of surgical suite and sterilization products and be sure to take advantage of these EXCLUSIVE special offers…only available until February 4, 2022."

The fax then lists various available products with special pricing or discounts. The bottom of the fax provides the telephone number 1-866-853-3832 and website

www.ricasurgical.com.

(Exhibit A).

17. Defendant created or made the Fax, or directed a third party to do so, and the Fax was sent by or on behalf of Defendant with Defendant's knowledge and authorization.

18. Plaintiff did not give Defendant "prior express invitation or permission" to send the Fax.

19. On information and belief, Defendant faxed the same and other unsolicited facsimiles advertisements without first receiving the recipients' prior express invitation or permission, and without the required opt-out language, *see* 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding the affirmative defense of established business relationship.

20. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

21. The Fax does not display a proper opt-out notice as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

22. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendant, its employees and agents, and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the Fax advertisement sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

23. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

24. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a) Whether the Fax and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b) Whether each Defendant meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(c) Whether Defendant had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(d) Whether the Fax contains an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e) Whether Defendant should be enjoined from faxing advertisements in the future;

6

(f) Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(g) Whether the Court should award treble damages.

25. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the Faxes sent by or on behalf of Defendant advertising the commercial availability or quality of Defendant's property, goods, or services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

26. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>: Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

27. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

(c) Defendant has acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Defendant identified persons to receive the Fax transmissions and it is believed that Defendant's and/or Defendant's agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq*.**

28. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

29. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

30. **Opt-Out Notice Requirements.** The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

   (1) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

   (2) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

   (3) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

   (4) The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

31. **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements, and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

    A. The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

    B. The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

    C.  The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

  32. **The Fax**. Defendant sent the Fax on or about January 25, 2022, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Fax constitutes an advertisement under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and Defendant is precluded from asserting that Defendant had an established business relationship with Plaintiff and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes the Fax and all others sent during the four years prior to the filing of this case through the present.

  33. **Defendant's Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express

11

invitation or permission and without compliant opt-out notice. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder.

34. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

35. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members even if their actions were only negligent.

36. Defendant knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendant or anybody else to send faxes advertising the commercial availability or quality of Defendant's property, goods, or services, namely its custom calendars; (b) Plaintiff and the other class members did not have an established business relationship; (c) Defendant transmitted advertisements; (d) the Fax does not contain the required Opt-Out Notice, thereby precluding the affirmative defense of established business relationship; and (e) Defendant's transmission of fax advertisements without prior express invitation or permission was unlawful.

37. Defendant's actions injured Plaintiff and the other class members. Receiving Defendant's junk fax caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's fax used Plaintiff's and the other class members' telephone lines and fax machines. Defendant's fax cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendant's unauthorized fax. That time otherwise would have been spent on Plaintiff's and the other class members' business or personal activities. Defendant's fax intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone. Finally, the injury and property

damage sustained by Plaintiff and the other class members from the sending of Defendant's advertisement occurred outside of Defendant's premises.

WHEREFORE, Plaintiff, DANIEL W. HAMBLIN, D.V.M., P.C. d/b/a ALPINE ANIMAL HOSPITAL, LTD., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, INTERNATIONAL SURGICAL PRODUCTS, INC. d/b/a RICA SURGICAL PRODUCTS, INC., as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award statutory liquidated damages in the sum of five hundred dollars ($500.00) for each violation, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C. That Court enjoin Defendant from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

        Respectfully submitted,

        DANIEL W. HAMBLIN, D.V.M., P.C. d/b/a
        ALPINE ANIMAL HOSPITAL, LTD.,
        individually, and as the representative of a class of
        similarly-situated persons

By: /s/ Ryan M. Kelly
     Ryan M. Kelly
     ANDERSON + WANCA
     3701 Algonquin Road, Suite 500
     Rolling Meadows, IL 60008
     Telephone: 847/368-1500
     Fax: 847/368-1501
     rkelly@andersonwanca.com